RILEY SAFER HOLMES & CANCILA LLP
MEGHAN R. MCMEEL (CSB No. 284841)
mmcmeel@rshc-law.com
JAMAL S. MUHAMMAD (CSB No. 290712) (admission to the EDCA pending)
jmuhammad@rshc-law.com
456 Montgomery Street, 16th Floor
San Francisco, CA 94104
Telephone: (415) 275-8550
Facsimile: (415) 275-8551

Attorneys for Plaintiff
DALTON EDWARD DYER

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DALTON EDWARD DYER, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF AUBURN, JOSHUA EAGAN, AND MATTHEW NICHOLS, <br><br> Defendants. | Case No. 2:21-at-1117 <br><br> COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES <br><br> **DEMAND FOR JURY TRIAL** |

## COMPLAINT

Plaintiff DALTON EDWARD DYER for his Complaint against Defendants CITY OF AUBURN, JOSHUA EAGAN, and MATTHEW NICHOLS alleges, as follows:

## INTRODUCTION

1. DALTON EDWARD DYER was beaten, tased, and arrested for a crime he did not commit by Officers JOSHUA EAGAN and MATTHEW NICHOLS. Following his arrest, Defendants JOSHUA EAGAN and MATTHEW NICHOLS falsely claimed that MR. DYER struck and injured MATTHEW NICHOLS, when in fact, JOSHUA EAGAN struck and tased MATTHEW NICHOLS during their illegal, unnecessary, and violent arrest of MR. DYER.

2. MR. DYER was physically injured, emotionally scarred, and falsely imprisoned.

1  His injuries are a direct result and natural consequence of the policies and practices of the CITY

2  OF AUBURN.

3       3.     MR. DYER brings this lawsuit to redress the violence and injustice the Defendants

4  inflicted upon him.

5  **JURISDICTION AND VENUE**

6       4.     This action is brought under 42 U.S.C. § 1983 to redress the deprivation under

7  color of law of Plaintiff's rights as secured by the United States Constitution, and under various

8  state law causes of action.

9       5.     The Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331,

10  and supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367.

11       6.     Venue in this District is proper under 28 U.S.C. § 1391(b) because Defendant City

12  of Auburn is a municipal corporation that resides within this District, and because the events

13  giving rise to the claims asserted in this Complaint occurred within this District.

14  **PARTIES**

15       7.     Plaintiff DALTON EDWARD DYER ("MR. DYER or "PLAINTIFF") is a 29-

16  year-old African-American male who resides in Sacramento, California.  He resided in Auburn,

17  California and worked as an events supervisor during the events relevant to and described in this

18  Complaint.

19       8.     Defendant Officer JOSHUA EAGAN ("OFC. EAGAN" or "DEFENDANT

20  EAGAN") was an officer with the City of Auburn Police Department, employed by Defendant

21  City of Auburn and was acting within the scope of his employment during all relevant times. OFC

22  EAGAN is currently a defendant in an action filed by a citizen who claims OFC EAGAN and

23  other officers violated his constitutional rights during an unlawful arrest. (*Kershner v. Eagan, et*

24  *al*, Case No. 20CV0147-JAM-DB, EDCA).

25       9.     Defendant Officer MATTHEW NICHOLS ("OFC. NICHOLS" or "DEFENDANT

26  NICHOLS") was an officer with the City of Auburn Police Department, employed by Defendant

27  City of Auburn and was acting within the scope of his employment during all relevant times.

28  OFC. NICHOLS has a history of being over aggressive and covering up his misconduct.  In 2017,

- 2 -

1   while working for the Sacramento Police Department, OFC. NICHOLS, arrived at a crime scene

2   where there were multiple officers exercising restraint, and started shooting.  OFC NICHOLS

3   shot a police dog, told other officers not to talk about it over the radio, and then lied claiming the

4   police dog received lacerations from the suspect during the arrest.  Video evidence revealed the

5   truth.     https://www.youtube.com/watch?v=KvGMyem7Awo&list=WL&index=10.     OFC.

6   NICHOLS had also shot a suspect in 2001 and 2014 and has previously been reprimanded for

7   failing to properly deploy his bodycam.

8         10.     Shortly after Defendants OFC. EAGAN and OFC. NICHOLS ("OFFICER

9   DEFENDANTS") violent arrest of MR. DYER, OFC. NICHOLS was placed on administrative

10  leave. Although OFC. NICHOLS wrote in his police report that MR. DYER punched him in the

11  face after OFC. EAGAN tased MR. DYER, OFC. NICHOLS told at least one medical

12  professional that he had been injured by OFC. EAGAN, who had punched and tased him.  The

13  City of Auburn allowed OFC. NICHOLS to retire without any public explanation of the

14  contradictory information he provided about how he was allegedly injured.

15        11.     Defendant City of Auburn ("AUBURN" or "CITY") is a municipal corporation

16  under the laws of the State of California.    AUBURN operates the City of Auburn Police

17  Department ("APD") and is responsible for the policies, practices, and customs of the CITY and

18  the APD.

19                              **FACTUAL BACKGROUND**

20        12.     On October 12, 2018, OFC. EAGAN stopped a vehicle operated by Martin

21  Gonzalez-Valenzuela for a driving under the influence investigation at 153 Knoll St., Auburn,

22  California.   OFC. EAGAN determined that Mr. Gonzalez-Valenzuela was intoxicated and

23  arrested him.  MR. DYER was a passenger in the car.  The stop occurred less than 100 yards

24  away from the street MR. DYER lived on.

25        13.     Although MR. DYER had done nothing wrong, he felt somewhat responsible for

26  his friend's arrest. In an effort to be responsible and not drink and drive, MR. DYER had called

27  Mr. Gonzalez-Valenzuela, for a ride not knowing that Mr. Gonzalez-Valenzuela was inebriated.

28  MR. DYER wanted to apologize to his friend and get the necessary information so that

1    MR. DYER could contact Mr. Gonzalez-Valenzuela's family so that they could bail him out and

2    pick up the car.

3         14.    MR. DYER asked OFC. EAGAN if he could speak to his friend before OFC.

4    EAGAN transported him to jail.  MR. DYER had been respectful and cooperative.  He had not

5    broken any laws.  According to OFC. EAGAN, he gave MR. DYER permission to speak with his

6    friend and had intended to allow MR. DYER to walk home.  With OFC. EAGAN's permission,

7    MR. DYER walked back to OFC. EAGAN's patrol car and he began talking to Mr. Gonzalez-

8    Valenzuela.

9         15.    When OFC. NICHOLS arrived on the scene, without warning or provocation he

10   escalated the situation by using physical force.  While MR. DYER was facing OFC. EAGAN's

11   patrol car talking to Mr. Gonzalez-Valenzuela through the window, OFC. NICHOLS approached

12   MR. DYER from behind, unannounced, pushed him up against the patrol car, and started rifling

13   through MR. DYER's pockets without explanation or permission. As OFC. NICHOLS went

14   through MR. DYER's pockets, MR. DYER was pressed up against the patrol car and his hands

15   were up in the air.

16        16.    Naturally, MR. DYER was startled by a person sticking their hands in his pockets

17   from behind and shoving him up against a police car unexpectedly.  Before MR. DYER could

18   even figure out what was going on, OFC. NICHOLS forcibly pinned his hands behind his back

19   and OFC. EAGAN punched MR. DYER in the side of his face.  OFC. EAGAN continued

20   throwing punches.

21        17.    MR. DYER was hurt, dazed, and confused.  He did not do anything wrong.  The

22   DEFENDANT OFFICERS did not tell him he was under arrest.  They did not tell him to place

23   his hands on the hood.  They did not ask him to assume the position.  They did not ask him for his

24   wallet.  They did not instruct him to empty his pockets.  MR. DYER did not assume a fighting

25   stance.  He did not attempt to strike the DEFENDANT OFFICERS.  MR. DYER had no idea why

26   OFC. NICHOLS decided to shove MR. DYER up against the car and stick his hand in MR.

27   DYER's pants without warning or permission.  MR. DYER had no idea why OFC. EAGAN

28   punched him in the face and kept swinging.  He cried out: "I'm not doing nothing!"

- 4 -

18.     The DEFENDANT OFFICERS grabbed MR. DYER by his arms and swung him around.  MR. DYER did not know why they were grabbing him or swinging him around.  They still did not tell him he was under arrest. They did not instruct him to go to the ground.  With his arms pinned, and not wanting to get further injured by allowing the DEFENDANT OFFICERS to slam him face-first into the street, MR. DYER maintained his balance while being swung around and continued to cry out, "I'm not doing nothing!"

19.     Defendant OFC. EAGAN then deployed his taser twice, tasing both MR. DYER and Defendant OFC. NICHOLS causing both men to collapse onto the paved road, with MR. DYER still crying out, "I'm not doing nothing!"

20.     MR. DYER was falsely arrested on October 12, 2018, and was charged with resisting arrest.  The DEFENDANT OFFICERS did not even bother to charge MR. DYER with whatever crime he allegedly committed which would have given the DEFENDANT OFFICERS probable cause to detain, search, and arrest MR. DYER.

21.     Despite writing in his report that MR. DYER punched him, OFC. NICHOLS told at least one medical professional that he was injured by his partner:

| | | | | | |
|---|---|---|---|---|---|
| 10-22-2018 12:15 PM | | rramos55 | REVIEW | workcomp | talked to Josh and he stated that yes pt was hit in the jaw by his partner and he is pretty sure it was at work. I will call patient to double check if he thinks I am supposed to bill work comp or through City of Auburn (pin to top) |

22.     On July 5, 2019, the State of California filed a felony information against MR. DYER charging him with resisting arrest by threats and violence resulting in great bodily harm to OFFICERS NICHOLS and EAGAN, battery with injury on a peace officer, and battery with serious bodily injury, in Superior Court of California, County of Placer, Case No. 62-163200.

- 5 -

23.     On October 19, 2020, the information was amended dropping all felony counts to one misdemeanor count for willful resistance, delay and obstruction of OFC. NICHOLS and OFC. EAGAN.

24.     On February 9, 2021, the criminal court ordered that MR. DYER would be exonerated and the parties stipulated to dismiss the charges as long as MR. DYER obeyed all laws until February 10, 2022, which he has and continues to do.

25.     On April 20, 2021, MR. DYER submitted a claim for damages with the CITY pursuant to applicable sections of the California Government Code, which the CITY rejected on May 28, 2021.

26.     MR. DYER has always maintained his innocence. Attorneys for MR. DYER made repeated requests for any video of the incident. DEFENDANT OFFICERS claimed their vehicles did not have dash cameras.  They also claimed that they were not wearing body cameras.

27.     In the months that followed MR. DYER's arrest, he was harassed by the police. They would station police cars outside of his home and would tail him when he would drive.  An unknown officer even tagged him in a Facebook post on the Placer County Sheriffs Association page in a thinly veiled threat.  See Exhibit 1.

28.     The conduct of Defendants OFC. EAGAN and OFC. NICHOLS was willful, wanton, malicious, and done with reckless disregard for the rights and safety of MR. DYER and caused MR. DYER to suffer physical and emotional injuries.

## FIRST CLAIM FOR RELIEF

### Unreasonable Detention, Search, and Arrest (42 U.S.C. § 1983)

(Against Defendants OFC. EAGAN and OFC. NICHOLS)

29.     Plaintiff repeats and realleges each and every previous allegation of this Complaint with the same force and effect as if fully set forth herein.

30.     DEFENDANT OFFICERS searched, detained, and arrested MR. DYER without probable cause or permission resulting in injury.  DEFENDANT OFFICERS also caused MR. DYER to be improperly subjected to judicial proceeding for which there was no legitimate

1    probable cause resulting in injury.

2        31.    DEFENDANT OFFICERS' actions were intentional.    They were also

3    unreasonable because DEFENDANT OFFICERS did not have permission or probable cause to

4    search, detain, or arrest MR. DYER.  He had committed no crime and was less than a hundred

5    yards from the street he lived on.

6                            **SECOND CLAIM FOR RELIEF**

7        **Unreasonable Search and Seizure—Excessive Force (42 U.S.C. § 1983)**

8                        (Against Defendants OFC. EAGAN and OFC. NICHOLS)

9
10       32.    Plaintiff repeats and realleges each and every previous allegation of this Complaint

     with the same force and effect as if fully set forth herein.
11
12       33.    DEFENDANT OFFICERS used an unreasonable amount of force to intentionally

13   detain, search and arrest MR. DYER.  DEFENDANT OFFICERS were unreasonable because did

14   not request or order MR. DYER to empty his pockets or produce his wallet before OFC.

15   NICHOLS stuck his hands in MR. DYER's pocket from behind and pushed him up against OFC.

     EAGAN's patrol car, or before OFC. EAGAN punched MR. DYER in the face.
16
17       34.    The OFFICER DEFENDANTS use of force was unreasonable because neither

18   prior to nor after DEFENDANT OFFICERS assaulted MR. DYER, did MR. DYER ever attempt

     to hit, strike, bite, retaliate or do anything else which would justify DEFENDANT OFFICERS
19
20   using even a small amount of force.

21       35.    OFC. EAGAN's reckless and unreasonable use of his taser is further evidenced by

22   the fact that he tased OFC. NICHOLS causing OFC. NICHOLS to fall onto the paved road.

     OFC. EAGAN omitted this fact from his report.
23
24       36.    DEFENDANT OFFICERS used an unreasonable amount of force to arrest

25   MR. DYER because he broke no laws and could have walked home.  His street was less than 100

     yards away from where the DEFENDANT OFFICERS assaulted him.
26
27       37.    As a result of DEFENDANT OFFICERS using an unreasonable amount of force,

28   MR. DYER suffered physical pain and extreme mental suffering.

                                    - 7 -

**THIRD CLAIM FOR RELIEF**

**Substantive Due Process (42 U.S.C. § 1983)**

(Against Defendants OFC. EAGAN and OFC. NICHOLS)

38.     Plaintiff repeats and realleges each and every previous allegation of this Complaint with the same force and effect as if fully set forth herein.

39.     MR. DYER had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive him of life, liberty, or property in such a manner as to shock the conscience.

40.     As a result of the excessive force by Defendants OFC. EAGAN and OFC. NICHOLS, MR. DYER has sustained physical and mental injuries.

41.     Defendants OFC EAGAN and OFC NICHOLS, were acting under color of state law and thus violated the Fourteenth Amendment rights of MR. DYER.

42.     The aforementioned actions of Defendants OFC. EAGAN and OFC. NICHOLS, along with other undiscovered conduct, shock the conscience, in that they acted with deliberate indifference to the constitutional rights of MR. DYER unrelated to any legitimate law enforcement objective.

43.     Defendants OFC. EAGAN and OFC. NICHOLS, acting under color of state law, thus violated the Fourteenth Amendment rights of MR. DYER.

44.     As a direct and proximate cause of the acts of Defendants OFC. EAGAN and OFC. NICHOLS, MR. Dyer was physical and emotional injured.

**FOURTH CLAIM FOR RELIEF**

**Deliberate Fabrication of Evidence (42 U.S.C. § 1983)**

(Against Defendants OFC. EAGAN and OFC. NICHOLS)

45.     Plaintiff repeats and realleges each and every previous allegation of this Complaint with the same force and effect as if fully set forth herein.

46.     DEFENDANT OFFICERS fabricated probable cause to search, detain and arrest MR. DYER.

47.     DEFENDANT OFFICERS fabricated a rationale for OFC. EAGAN to punch MR.

- 8 -

1    DYER in the face.

2         48.    DEFENDANT OFFICERS falsely claimed that MR. DYER punched OFC.

3    NICHOLS in the face, when in fact OFC. EAGAN recklessly punched and tased OFC.

4    NICHOLS. OFC. NICHOLS confessed this fact to a medical professional.

5         49.    The fabricated evidence provided by the DEFENDANT OFFICERS was used to

6    charge MR. DYER and then increase the number and severity of the charges after MR. DYER

7    refused to plead guilty to a crime that he did not commit.

8                              **FIFTH CLAIM FOR RELIEF**

9        **False Arrest/False Imprisonment (Cal. Govt. Code § 820 and California Common Law)**

10                      (Against Defendants OFC. EAGAN and OFC. NICHOLS)

11        50.    Plaintiff repeats and realleges each and every previous allegation of this Complaint

12   with the same force and effect as if fully set forth herein.

13        51.    DEFENDANT OFFICERS detained, searched and arrested MR. DYER without

14   probable cause to suggest that MR. DYER committed a crime.

15        52.    MR. DYER's freedom of movement was restricted as a result. Further,

16   DEFENDANT OFFICERS physically and emotionally injured MR. DYER during the arrest.

17                              **SIXTH CLAIM FOR RELEIF**

18              **Battery (Cal. Govt. Code § 820 and California Common Law)**

19                      (Against Defendants OFC. EAGAN and OFC. NICHOLS)

20        53.    Plaintiff repeats and realleges each and every previous allegation of this Complaint

21   with the same force and effect as if fully set forth herein.

22        54.    DEFENDANT OFFICERS intentionally used force to search, push, punch and tase

23   MR. DYER without his consent causing physical and emotional harm to MR. DYER.

24        55.    OFC. NICHOLS sticking his hands in MR. DYER's pockets from behind and

25   pushing him up against OFC. EAGAN's patrol car without warning, permission, or probable

26   cause was unreasonable.  MR. DYER had broken no laws.  He was speaking with his friend with

27   OFC. EAGAN's permission.  OFC. EAGAN was going to let MR. DYER walk home as he had

28   committed no crimes and was only about 100 yards away from his street.   Prior to OFC.

1    NICHOLS initial battery on MR. DYER, neither of the DEFENDANT OFFICERS asked or

2    ordered MR. DYER to turn over his wallet or empty his pockets. They had not told him he was

3    being detained or arrested.

4         56.    OFC. EAGAN punching MR. DYER in the face without warning or just cause was

5    unreasonable.  MR. DYER had broken no laws and he did not pose a risk of physical harm to

6    anyone.  MR. DYER did not assume a fighting stance.  He did not attempt to strike the

7    DEFENDANT OFFICERS.  Moreover, OFC. NICHOLS had MR. DYER's hands pinned behind

8    his back when OFC. EAGAN began punching.

9         57.    DEFENDANT OFFICERS grabbing MR. DYER by his arms and swinging him

10   around and in an effort to slam MR. DYER onto the paved road was unreasonable.

11   DEFENDANT OFFICERS did not tell MR. DYER he was under arrest.  They did not tell him to

12   place his hands on the hood or ask him to sit down on the sidewalk before they grabbed him and

13   attempted to slam him onto the street.   MR. DYER was not attempting to flee and was not

14   fighting back.

15        58.    OFC. EAGAN tasing MR. DYER twice (and OFC. NICHOLS once) was

16   unreasonable. MR. DYER posed no risk of physical harm to DEFENDANT OFFICERS. He was

17   not attempting to flee.  The only action MR. DYER had taken was to maintain his balance so that

18   he would not hit the street face-first.

19        59.    DEFENDANT OFFICERS' physical assault of MR. DYER resulted in physical

20   and emotional injuries.

21                        **SEVENTH CLAIM FOR RELIEF**

22      **Unreasonable Use of Force (Cal. Govt. Code § 820 and California Common Law)**

23                          (Against all Defendants)

24        60.    DEFENDANT OFFICERS used force to search, push, punch and tase MR. DYER

25   without his consent causing physical and emotional harm to MR. DYER.

26        61.    OFC. NICHOLS sticking his hands in MR. DYER's pockets from behind and

27   pushing him up against OFC. EAGAN's patrol car without warning, probable cause or permission

28   was unreasonable.  MR. DYER had broken no laws.  He was speaking with his friend with OFC.

COMPLAINT

1   EAGAN's permission.  OFC. EAGAN was going to let MR. DYER walk home as he was only

2   about 100 yards away from his street.  Prior to OFC. NICHOLS initial battery on MR. DYER,

3   neither of the DEFENDANT OFFICERS asked or ordered MR. DYER to turn over his wallet or

4   empty his pockets. They had not told him he was being detained or arrested.

5         62.    OFC. EAGAN punching MR. DYER in the face without warning or just cause was

6   unreasonable.  MR. DYER had broken no laws.  MR. DYER did not assume a fighting stance.

7   He did not attempt to strike the DEFENDANT OFFICERS.  Moreover, OFC. NICHOLS had

8   MR. DYER's hands pinned behind his back.

9         63.    DEFENDANT OFFICERS grabbing MR. DYER by his arms and swinging him

10   around to slam him onto the paved road was unreasonable.  DEFENDANT OFFICERS did not

11   tell him DYER was under arrest.  They did not tell him to place his hands on the hood or ask him

12   to sit down on sidewalk before they grabbed him and attempted to slam him onto the street.   MR.

13   DYER was not attempting to flee and was not fighting back.

14         64.    OFC. EAGAN tasing MR. DYER twice (and OFC. NICHOLS once) was

15   unreasonable. OFC. EAGAN's actions were unreasonable. MR. DYER posed no risk of physical

16   harm to DEFENDANT OFFICERS. He was not attempting to flee.  The only action MR. DYER

17   had taken was to maintain his balance so that he would not hit the street face-first.

18         65.    DEFENDANT OFFICERS' physical assault of MR. DYER resulted in physical

19   and emotional injuries.

20   **EIGHTH CLAIM FOR RELIEF**

21   **Violation of Bane Act (Cal. Civil Code § 52.1)**

22   (Against Defendants OFC. EAGAN and OFC. NICHOLS)

23         66.    Plaintiff repeats and realleges each and every previous allegation of this Complaint

24   with the same force and effect as if fully set forth herein.

25         67.    California Civil Code, Section 52.1 (the Bane Act), prohibits any person from

26   interfering with another person's exercise or enjoyment of his constitutional rights by threats,

27   intimidation, or coercion (or by the use of unconstitutionally excessive force).

28         68.    Conduct that violates the Fourth Amendment violates the California Bane Act.

69.     Defendants OFC EAGAN and OFC NICHOLS' use of force was excessive and unreasonable under the circumstances as alleged in this Complaint.  Defendants OFC. EAGAN and OFC. NICHOLS detained, searched, battered and arrested MR. DYER without probable cause.  Defendants' actions thus deprived MR. DYER of his right to be free from unreasonable searches and seizures under the Fourth Amendment and applied to state actors by the Fourteenth Amendment.

70.     Defendants OFC. EAGAN and OFC. NICHOLS intentionally violated MR. DYER's rights under § 1983 by detaining, searching and arresting MR. DYER without probable cause, and by using excessive force against MR. DYER.   Further, these acts by Defendants OFC. EAGAN and OFC. NICHOLS demonstrate that they had a reckless disregard for MR. DYER's constitutional rights.

71.     At the time of the beating MR. DYER did not pose an immediate threat of death or serious bodily injury there was no indication that he was likely to harm anyone or flee.

72.     DEFENDANT OFFICERS caused MR. DYER to suffer extreme mental and physical pain and suffering.

**NINTH CLAIM FOR RELIEF**

**Conspiracy to Deprive Plaintiff's Constitutional Rights**

(Against Defendants OFC. EAGAN and OFC. NICHOLS)

73.     Plaintiff repeats and realleges each and every previous allegation of this Complaint with the same force and effect as if fully set forth herein.

74.     After they unlawfully searched, detained, beat, and arrested MR. DYER, Defendants OFC. EAGAN and OFC. NICHOLS agreed among themselves to act in concert to deprive MR. DYER of his constitutional rights, including his rights to due process in order to justify and coverup their misconduct.

75.     In furtherance of the conspiracy, Defendants OFC. EAGAN and OFC. NICHOLS engaged in and facilitated numerous overt acts, including but not limited to those set forth above – such as writing false statements in police reports and lying under oath – and were otherwise willful participants in the joint activity.

- 12 -

1   76.    DEFENDANT OFFICERS' conduct caused MR. DYER to be wrongly subjected

2   to criminal proceedings and caused him to suffer emotional harm.

3   **TENTH CLAIM FOR RELIEF**

4   **Failure to Intervene (California Common Law)**

5   (Against Defendants OFC. EAGAN and OFC. NICHOLS)

6   77.    Plaintiff repeats and realleges each and every previous allegation of this Complaint

7   with the same force and effect as if fully set forth herein.

8   78.    Defendants OFC. EAGAN and OFC. NICHOLS failed to intervene and stop the

9   unconstitutional actions of each other during the excessive use of force against MR. DYER.

10   79.    Defendants OFC. EAGAN and OFC. NICHOLS caused MR. DYER to be

11   subjected to excessive force and improper criminal proceedings.

12   80.    Defendants OFC. EAGAN and OFC. NICHOLS knew that they were committing

13   constitutional violations and failed to intervene or stop each other's misconduct, despite having

14   the opportunity to do so.

15   81.    DEFENDANT OFFICERS failure to intervene were a substantial factor in MR.

16   DYER's physical and emotional injuries.

17   **ELEVENTH CLAIM FOR RELIEF**

18   **Intentional Infliction of Emotional Distress (California Common Law)**

19   (Against all Defendants)

20   82.    Plaintiff repeats and realleges each and every previous allegation of this Complaint

21   with the same force and effect as if fully set forth herein.

22   83.    The actions taken DEFENDANT OFFICERS against MR. DYER as stated in this

23   Complaint were outrageous, including: the illegal detention, search, battery, false arrest,

24   fabricating facts, the filing of false police reports, and lying under oath.

25   84.    DEFENDANT OFFICERS acted with reckless disregard of the probability that

26   MR. DYER would suffer emotional distress.

27   85.    The conduct of DEFENDANT OFFICERS was a substantial factor in MR.

28   DYER's physical and emotional injuries.

- 13 -

COMPLAINT

1       86.     The CITY's hiring of OFC. NICHOLS was outrageous given his history of

2   violence and encouraging of other police officers to provide false reports to coverup his mistakes.

3       87.     The CITY's acted with reckless disregard of the probability that citizens like

4   MR. DYER would be physically and emotionally harmed by OFC. NICHOLS.

5       88.     The CITY's negligent hiring of OFC. NICHOLS was a substantial factor in MR.

6   DYER's physical and emotional injuries.

7                         **TWELFTH CLAIM FOR RELIEF**

8                  **Negligent Hiring (California Common Law)**

9                     (Against Defendant CITY)

10      89.     Plaintiff repeats and realleges each and every previous allegation of this Complaint

11   with the same force and effect as if fully set forth herein.

12      90.     The CITY knew or should have known defendant OFC. NICHOLS was a danger

13   to the public and was prone to lie and encourage other police officers to lie to cover up his

14   misconduct.

15      91.     Prior to being hired by AUBURN, OFC. NICHOLS worked as a police officer for

16   Sacramento.  While working as a Sacramento Police Officer, OFC NICHOLS shot citizens in

17   2001 and 2014.  OFC. NICHOLS was also reprimanded by the Sacramento Police Department for

18   not wearing a body camera.

19      92.     In 2017, less than a year before he was hired by AUBURN, OFC. NICHOLS shot

20   a police dog, told other officers not to talk about it over the radio, and then falsely shifted blame

21   of   his   misconduct   onto   a   suspect.    Video   evidence   revealed   the   truth.

22   https://www.youtube.com/watch?v=KvGMyem7Awo&list=WL&index=10 .

23      93.     On information and belief, OFC. NICHOLS encouraged other Sacramento Police

24   Department Officers to lie and claim the police dog was injured by the suspect when in fact OFC.

25   NICHOLS shot him.  The City's official account of the incident claimed: "K-9 "Reno" sustained

26   two large lacerations to his abdomen," when in fact OFC. NICHOLS recklessly shot the dog.

27   https://www.cityofsacramento.org/Police/Transparency/Officer-Involved-

28   Shootings/Incidents/September-11-2017.

94.     The threat posed by OFC. NICHOLS materialized once the CITY hired him as reflected in his conduct in this case.   Prior to OFC. NICHOLS arriving on the scene, the interaction between OFC. EAGAN and MR. DYER was peaceful.   MR. DYER had not broken any laws.   He was polite and respectful.   OFC. EAGAN allowed MR. DYER to speak to Gonzalez-Valenzuela and was going to allow him to walk home.

95.     When OFC. NICHOLS arrived on the scene, without warning or provocation he escalated the situation by using physical force.   While MR. DYER was facing OFC. EAGAN's patrol car talking to Mr. Gonzalez-Valenzuela through the window, OFC. NICHOLS approached MR. DYER from behind, unannounced, pushed him up against the patrol car, and started rifling through MR. DYER's pockets without explanation or permission.

96.     OFC. NICHOLS' physically violent detention and search of MR. DYER prompted OFC. EAGAN to take physical action as well.   OFC. EAGAN wild punches hit MR. DYER in the face, and hit OFC. NICHOLS in the face.   When the DEFENDANT OFFICERS were unsuccessful in slamming MR. DYER onto the street, OFC. EAGAN deployed his taser twice. Both OFC. NICHOLS and MR. DYER were tased and fell into the street.

97.     Rather than admit OFC. NICHOLS turned a peaceful interaction into a violent one resulting in OFC. EAGAN intentionally punching and tasing a noncombative MR. DYER, and accidentally punching and tasing his fellow officer, the OFFICER DEFENDANTS falsely blamed MR. DYER for staring the confrontation and injuring OFC. NICHOLS.

98.     OFC. NICHOLS did admit to a medical professional OFC. EAGAN hit him.

| 10-22-2018 12:15 PM | | rramos55 | REVIEW | | workcomp | talked to Josh and he stated that yes pt was hit in the jaw by his partner and he is pretty sure it was at work. I will call patient to double check if he thinks I am supposed to bill work comp or through City of Auburn (pin to top) |

1    99.    OFC. NICHOLS' unfitness to be entrusted with extraordinary police powers and

2  the CITY's negligence in hiring him is further evidenced by APD placing him on administrative

3  leave and the CITY allowing him to retire early following his unlawful and violent arrest of MR.

4  DYER. He had been employed by the CITY for less than a year.

5    100.    The CITY's negligent hiring of OFC. NICHOLS was a substantial factor in

6  MR. DYER's physical and emotional injuries.

7                              **THIRTEENTH CLAIM FOR RELIEF**

8         **Municipal Liability for Unconstitutional Custom or Policy (42 U.S.C. § 1983)**

9                                    (Against Defendant CITY)

10    101.    Plaintiff repeats and realleges each and every previous allegation of this Complaint

11  with the same force and effect as if fully set forth herein.

12    102.    DEFENDANT OFFICERS were employees of the CITY at all relevant times

13  acting under the official color of law.

14    103.    DEFENDANT OFFICERS acting pursuant to a widespread custom or practice in

15  the CITY deprived MR. DYER of his constitutional rights as stated in this Complaint.

16    104.    The CITY's widespread custom and practice of allowing police officer to deprive

17  citizens on their constitutional rights and caused DEFENDANT OFFICERS to believe that they

18  could do the same without consequence.  MR. DYER was physically and emotionally harmed as

19  a result.

20                              **FOURTEENTH CLAIM FOR RELIEF**

21      **Municipal Liability – Failure to Train, Supervise, and/or Discipline (42 U.S.C. § 1983)**

22                                    (Against Defendant CITY)

23    105.    Plaintiff repeats and realleges each and every previous allegation of this Complaint

24  with the same force and effect as if fully set forth herein.

25    106.    DEFENDANT OFFICERS deprived MR. DYER of his constitutional rights as

26  alleged in this Complaint.

27    107.    DEFENDANT OFFICERS were employees of the CITY at all relevant times

28  acting under the official color of law.

- 16 -

108.    The CITY's training, supervision and discipline provided by the CITY to police officers were inadequate to prevent officers from violating a citizen's constitutional rights.

109.    The CITY was deliberately indifferent to the obvious consequence of its failure to properly train, supervise, and/or discipline officers.

110.    The CITY's failure to properly train, supervise and/or discipline its police officers played a substantial part in the DEFENDANT OFFICERS violating MR. DYER's rights, resulting in physical and emotional harm to MR. DYER.

### FIFTEENTH CLAIM FOR RELIEF

### Vicarious Liability (Cal. Govt. Code § 815.2)

(Against Defendant CITY)

111.    Plaintiff repeats and realleges each and every previous allegation of this Complaint with the same force and effect as if fully set forth herein.

112.    In committing the acts alleged in the proceeding paragraphs, DEFENDANT OFFICERS were on duty members of the Auburn Police Department and were agents of the CITY, and at all relevant times they were acting within the scope of their employment and under the color of law.

113.    The conduct of DEFENDANT OFFICERS was a substantial factor in MR. DYER's physical and emotional injuries.

114.    Defendant City of Auburn is liable as a principal for all torts committed by its agents.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff MR. DYER request entry of judgment in his favor and against Defendants CITY OF AUBURN, OFC. EAGAN, OFC. NICHOLS, inclusive, as follows:

- 17 -

COMPLAINT

A.    For compensatory damages in excess of $5,000,000 under federal and state law, in the amount to be proven at trial;

B.    For punitive damages in an amount to be proven at trial;

C.    For interest;

D.    For treble damages under Civil Code Section 52.1;

E.    For reasonable costs of this suit and attorneys' fees; and

F.    For such further other relief as the Court may deem just, proper, and appropriate.

Dated: November 23, 2021                    RILEY SAFER HOLMES & CANCILA LLP


                                            By: /s/Meghan R. McMeel
                                                Meghan R. McMeel
                                                Jamal S. Muhammad
                                                Attorneys for Plaintiff
                                                DALTON EDWARD DYER

COMPLAINT